**Opinion issued July 25, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00538-CV

————————————

**INTERNATIONAL PAPER COMPANY, WASTE MANAGEMENT, INC., WASTE MANAGEMENT OF TEXAS, INC., AND MCGINNES INDUSTRIAL MAINTENANCE CORPORATION, Appellants**

**V.**

**HARRIS COUNTY, TEXAS AND THE STATE OF TEXAS, ACTING BY AND THROUGH THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, A NECESSARY AND INDISPENSABLE PARTY, Appellees**

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-76724**

## O P I N I O N

This is an interlocutory appeal from the denial of a temporary injunction to prevent Harris County from prosecuting an environmental action against International Paper Company, Waste Management, Inc., Waste Management of Texas, Inc., and McGinnes Industrial Maintenance Corporation (collectively "Defendants") using private attorneys retained on a contingent-fee basis.[1] On appeal, Defendants contend that the trial court erred in denying their request for temporary injunctive relief because (1) the County did not comply with the statutory provisions that control when a governmental entity can hire attorneys on a contingent-fee basis; (2) the County violated the state constitution's separation-of-powers doctrine by agreeing to payment of the private attorneys' contingent fee from funds to which the state may be entitled; and (3) the federal constitution's due-process guarantee prohibits private attorneys from prosecuting a quasi-criminal action on a governmental entity's behalf for a contingent fee. To the extent this interlocutory appeal has not been mooted by the intervening amendments to the fee agreement, we find no error and affirm.

### Background

This environmental action arises out of the disposal of paper mill waste along the San Jacinto River east of the City of Houston. In the mid-1960s,

---

[1]   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2011) (permitting interlocutory appeals of order granting or denying temporary injunction).

2

McGinnes built waste ponds, known as impoundments, along the river to dispose of waste generated by the Champion paper mill in Pasadena.[2] For reasons the parties dispute, the river inundated the impoundments. Whether and to what extent the inundation has caused—and continues to cause—the release of carcinogenic waste into the river is the subject of the lawsuit.

**The lawsuit**

The Harris County Commissioners Court authorized the County Attorney to file an environmental enforcement action. Under that authorization, the County filed its original petition, alleging that McGinnes, the Waste Management entities (which acquired the stock of McGinnes's parent company), and International Paper (which acquired Champion) were responsible for the San Jacinto River contamination and seeking civil penalties of up to $25,000 per day for violations of laws regulating the disposal of industrial waste.[3]

---

[2]   The area in which the impoundments are located has been designated as a "Superfund Site" by the Environmental Protection Agency. A "Superfund Site" is an area designated a national priority for environmental remediation because of known or threatened releases of hazardous substances at the site. *See* 42 U.S.C. §§ 9601−9626 (Comprehensive Environmental Response, Compensation and Liability Act, commonly known as the Superfund Law).

[3]   The County is pursuing the civil penalties provided for in section 7.351(a) of the Water Code. *See* TEX. WATER CODE ANN. § 7.351(a) (West 2008). Defendants do not make any argument against the use of contingent-fee lawyers under the specific language of that statute; instead, their arguments relate to the general nature of the County's lawsuit as one for civil penalties only.

In its resolution approving the lawsuit, the Commissioners Court authorized the County to retain the law firm of Connelly · Baker · Wotring LLP (CBW) as "special counsel" for the suit on a contingent-fee basis. The County's fee agreement with CBW provided that:

- the County found "a substantial need for the legal services which cannot be adequately performed by the attorneys of a governmental entity, nor can be reasonably obtained under a contract providing only for the payment of hourly fees";

- CBW, as "special counsel[,] shall prosecute civil enforcement cases on behalf of [the] County against defendants and seek necessary and appropriate temporary and permanent injunctive relief, damages, civil penalties, and attorney's fees and such other pecuniary recovery as may be provided for by the laws . . . in connection with the discharge of Hazardous Substances from [the San Jacinto River Superfund Site]. . . . and will work specifically with [designated attorneys in the County Attorney's Office];

- the County, among other things, would "cooperate fully" with CBW so that the firm may "provide effective representation";

- in the event of a judgment against Defendants, the County would pay "a fee consisting exclusively of all the attorney's fees awarded . . . , and 25% of each additional dollar in excess of the award of attorney's fees awarded to the County and collected by [CBW]";

- in the event of a settlement with Defendants, the County would pay "35% of any settlement to [CBW] if [the settlement] does not contain a separate allocation for the award of attorney's fees; or in the event the settlement provides for a separate allocation for the recovery of attorney's fees, [CBW] shall recover attorney's fees plus 25% of each additional dollar awarded to the County and collected by [CBW]";

- the County "shall have the absolute right to settle the case for no penalty which would yield no contingent fee on penalties to [CBW]," and CBW

4

"has no authority to settle or otherwise compromise the position of [the County] or any of its officers"; and

- unless the fee set out in the agreement was "determined to be prohibited by law," the fee would be paid "exclusively out of any recovery (including but not limited to any attorney's fees and expenses, as well as penalties) awarded in any judgment resulting from the Representation, or any settlement during the Representation" and "the fees described above shall be the sole source of compensation to [CBW]."

Defendants answered the lawsuit and filed counterclaims seeking a declaration that the County's contingent-fee agreement with CBW was void because, among other reasons, it (1) was not approved by the Texas Comptroller and violated subchapter C of chapter 2254 of the Government Code, section 403.0305 of the Government Code, and section 30.003(3) of the Water Code;[4] (2) calculated the contingent fee based on the total recovery in the underlying lawsuit and therefore pledged monies earmarked by statute for the state's treasury to private attorneys without legislative consent and in violation of the separation-

---

[4] Subchapter C, Chapter 2254, of the Government Code—entitled "Professional and Consulting Services – Contingent Fee Contracts for Legal Services"—governs when a "state governmental entity" can hire attorneys on a contingent-fee basis. *See* TEX. GOV'T CODE ANN. §§ 2254.101−.109 (West 2008). Although the County is not a "state governmental entity," the County is a "public agency" as the Water Code defines that term. *See* TEX. WATER CODE ANN. § 30.003(3) (West 2008). Before a "public agency" can enter into a contingent-fee contract for legal services "as provided in Subchapter C, Chapter 2254," the public agency must obtain the Comptroller's approval. *See* TEX. GOV'T CODE ANN. § 403.0305 (West 2013).

of-powers doctrine;[5] and (3) authorized private attorneys with a direct pecuniary interest in the outcome of the proceedings to exercise the County's enforcement powers in violation of Defendants' due process rights.

**The temporary-injunction proceedings**

Defendants sought to temporarily and permanently enjoin the lawsuit's prosecution by contingent-fee lawyers.[6] Defendants' evidence at the temporary-injunction hearing included: (1) the Commissioners Court Resolution authorizing the lawsuit and the engagement of CBW on a contingent-fee basis; (2) the contingent-fee agreement; (3) the Comptroller's certification that no records existed of any request for approval of the County's contingent-fee agreement with CBW; (4) a Commissioners Court commendation for McGinnes's, International Paper's, and other non-party entities' efforts to remediate the San Jacinto River Superfund Site; (5) media coverage of the lawsuit; and (6) various discovery requests propounded on Defendants under CBW's signature.

After considering the evidence and arguments of counsel, the trial court denied Defendants' temporary-injunction application, finding in pertinent part that:

---

[5] A civil penalty recovered by a local government under subchapter D of the Water Code must be divided equally between the state and the local government that brought the suit. TEX. WATER CODE ANN. § 7.107 (West 2008).

[6] McGinnes and the Waste Management entities jointly filed their counterclaims and application for temporary and permanent injunctive relief. International Paper filed separately. Both pleadings, however, requested the same relief and generally were supported by the same arguments.

1. On December 20, 2011, the Harris County Commissioners Court passed a two-part resolution entitled "Order Authorizing County Attorney to Execute Professional Services Agreement with [CBW] as Special Counsel and Order Authorizing the Filing of Suit to Enforce State Environmental Laws" (the Resolution);

2. The portion of the Resolution authorizing the Harris County Attorney to file the lawsuit in the above case passed by the Harris County Commissioners Court complies with the requirements of the Texas Water Code. *See* TEX. WATER CODE ANN. § 7.352;

. . .

4. The portion of the resolution authorizing the Harris County Attorney to execute a professional services agreement with [CBW] as special counsel to assist with the prosecution of this lawsuit does not comply with the requirements of the Texas Water Code and the Texas Government Code. *See* TEX. WATER CODE ANN. § 30.003(3) & TEX. GOV'T CODE ANN. § 403.0305; and

5. The portion of the Resolution approving the Professional Services Agreement between the Harris County Attorney and [CBW] is distinct and severable from the remainder of the December 20, 2011, Resolution.

As a result of these findings, the trial court reached two conclusions: first, "[t]he County Attorney has the authority to proceed with this law[ ]suit," but second, "[t]he Agreement between the Harris County Attorney and [CBW] approved by the Harris County Commissioners Court on December 20, 2011, is void." Thus, although the trial court denied their request for a temporary injunction, Defendants prevailed in part because the trial court determined that the contingent-fee agreement was void for statutory noncompliance.

7

**The execution of a new contingent-fee agreement**

Defendants filed a notice of appeal challenging the trial court's denial of temporary injunctive relief.[7] During the pendency of the appeal, the County and CBW executed multiple amended contingent-fee agreements. Those parts of the original fee agreement providing the basis for Defendants' application for a temporary injunction in the trial court were modified in the current fee agreement to (1) reflect the Comptroller's approval of the agreement; (2) subject CBW to "the supervision, direction, and control of the [County Attorney]"; and (3) provide that "[a]ny fee payable to [CBW] will be from the portion of any award, judgment, and/or settlement allocated by law to [the] County," not out of any recovery to which the State is entitled by law.

## Mootness

The County contends that Defendants' appeal is moot because the County's new contingent-fee agreement with CBW (1) is approved by the Comptroller, making it compliant with section 403.0305 of the Government Code; (2) provides for payment of CBW's fee only from the County's share of the recovery, giving

---

[7]  The County also perfected an appeal of the trial court's order but did not file an appellant's brief. The Court notified the County of its failure to file a brief as required by Texas Rule of Appellate Procedure 38.8(a)(1) and 42.3. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.2 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In response, the County filed a document stating that it had "decided to proceed only as an appellee" and is not "pursuing its own appeal." We construe the County's filing as a motion to dismiss its appeal, which we grant.

the legislature full control of the State's share of any recovery; and (3) subjects CBW to the "supervision, direction, and control" of the County Attorney, eliminating due process concerns that Defendants would be prosecuted by attorneys wholly motivated by pecuniary gain rather than public interest.[8] Defendants dispute that the new contingent-fee agreement resolves all of their objections to the use of contingent-fee lawyers in this case but assert, in the alternative, that this Court should not permit the County to evade appellate review of important issues by voluntarily executing a new contingent-fee agreement. Because mootness is a threshold issue that implicates subject-matter jurisdiction, we begin there. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442−43 (Tex. 1998) (observing that mootness doctrine implicates

---

[8] The County's new contingent-fee agreement with CBW is not a part of the appellate record, but the County appended the agreement to its brief and motion to dismiss this appeal as moot. Although we ordinarily do not consider documents submitted by the parties outside of the record, we may do so for the limited purpose of determining our own jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.220(c) (West 2011) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."); *Richards v. Richards*, 371 S.W.3d 412, 414 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The parties may rely on affidavits and other satisfactory evidence to establish whether the appellate court retains jurisdiction over the appeal."); *Bloom v. Bloom*, 935 S.W.2d 942, 946 (Tex. App.—San Antonio 1996, no writ) ("Matters outside the appellate record that establish justiciability or the lack thereof, that is whether an appeal is moot, are plainly cognizable by an appellate court."); *see also Harlow Land Co., Ltd. v. City of Melissa*, 314 S.W.3d 713, 716 n.4 (Tex. App.—Dallas 2010, no pet.) (considering documents not included in appellate record but attached to motion to dismiss in determining whether controversy between parties was moot).

subject-matter jurisdiction); *David Powers Homes, Inc. v. M.L. Rendelman Co., Inc.*, 355 S.W.3d 327, 334 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same).

"Appellate courts are prohibited from deciding moot controversies." *NCAA v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999); *see F.D.I.C. v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994) (explaining that courts may only decide cases in which actual controversy exists). "A case becomes moot if at any stage there ceases to be an actual controversy between the parties." *Jones*, 1 S.W.3d at 86; *see Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). When there is no live controversy between the parties, an opinion is impermissibly advisory; "rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (holding that Texas courts lack jurisdiction to render advisory opinions).

**A.    The amendment of the agreement after the trial court declared it void mooted Defendants' objections to the specific terms of the original contingent-fee agreement.**

We begin by defining the controversy that existed at the time Defendants appealed. The County executed a new contingent-fee agreement after the trial court declared the original contingent-fee agreement void. No reason exists for us to now address Defendants' grounds for injunctive relief that were premised upon the obsolete terms of the original-contingent fee agreement that is no longer in effect.

10

Defendants asserted three reasons why the trial court should enjoin the prosecution of the underlying lawsuit by contingent-fee counsel: the prosecution would violate (1) statutory provisions, (2) the Texas Constitution's separation-of-powers doctrine, and (3) the United States Constitution's due-process guarantees. The specific terms of the original contingent-fee agreement serve as the foundation for Defendants' arguments regarding the County's alleged violations of statutory mandates and the separation-of-powers doctrine. First, with respect to their complaint about the County's failure to comply with statutory provisions governing the execution of the original contingent-fee agreement, Defendants essentially prevailed. Although the trial court did not expressly find violations of all of the allegedly applicable statutory provisions advanced by Defendants, the trial court did find at least one statutory violation arising from the County's failure to comply with section 403.0305 by obtaining the Comptroller's approval before retaining CBW on a contingent-fee basis. *See* TEX. GOV'T CODE ANN. § 403.0305. And the trial court declared the original contingent-fee agreement void because of that statutory violation—a declaration that the County does not challenge on appeal.[9] Thus, there is no live controversy in this Court regarding the County's

---

[9] The County asserts that it cured the statutory violation found by the trial court by obtaining Comptroller approval of the amended contingent-fee arrangement with CBW. We make no holding on the issue of statutory compliance because the trial court has not been afforded an opportunity to hear evidence or legal argument regarding the new contingent-fee arrangement.

11

retainer of outside counsel through the original contingent-fee agreement due to statutory noncompliance.

Likewise, Defendants premised their request for temporary injunctive relief under the separation-of-powers doctrine on the particular circumstances surrounding the execution of the original contingent-fee agreement. Defendants complained that the County's failure to obtain the Comptroller's approval before executing the original contingent-fee agreement and the specific manner in which the County provided for the payment of CBW's fee under that agreement—exclusively from "any recovery (including but not limited to any attorney's fees and expenses, as well as penalties) awarded in any judgment resulting from the Representation, or any settlement during the Representation"—usurped legislative authority by interfering with the appropriations process and diverting funds to which the State may be entitled under section 7.107 of the Water Code. *See* TEX. WATER CODE ANN. § 7.107 (West 2008) ("Except in a suit brought for a violation of Chapter 28 of this code or of Chapter 401, Health and Safety Code, a civil penalty recovered in a suit brought under this subchapter by a local government shall be equally divided between: (1) the state; and (2) the local government that brought the suit."). Because Defendants' separation-of-powers complaints were premised on specific terms of the original contingent-fee agreement and the manner of its enactment, and those

12

terms are not part of the new agreement, no actual controversy regarding the County's alleged violation of the separation-of-powers doctrine is presented for this Court's resolution.

**B.   Defendants' due-process objection is not wholly dependent on the specific terms of any fee agreement and therefore is not moot**

The only actual controversy surviving the trial court's declaration that the original contingent-fee agreement was void is whether Defendants were entitled to temporary injunctive relief because the County's use of contingent-fee counsel in this case violates their due process rights. Unlike their statutory and separation-of-powers based complaints, Defendants' due-process argument is not wholly tied to the now-obsolete provisions of the original contingent-fee agreement. With regard to due process, Defendants complain that *any* "delegation of enforcement power to private, contingent-fee attorneys [in a quasi-criminal proceeding] violates Defendants' right to a fair and neutral prosecution under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." Because the County seeks to recover only the civil penalties provided for in the Water Code, rather than compensatory damages, Defendants characterize the underlying lawsuit as a "quasi-criminal" proceeding. And they complain that sections 2254.103 and 403.0305 of the Government Code—which permit the County to enter into a contingent-fee contract for legal services upon the performance of certain conditions precedent—are unconstitutional as applied in this "quasi-criminal" case.

13

Contrary to the County's assertion, Defendants' due-process argument does not turn exclusively on the level of control the County retains over contingent-fee counsel in the underlying lawsuit; rather, Defendants assert that any contingent-fee arrangement in a quasi-criminal proceeding violates due process because "the County's use of contingent-fee attorneys in this penalties-only action does not depend on language in the fee agreement." Defendants further assert that any contingent-fee agreement between the County and CBW violates due process "regardless of the County's post-suit maneuvering," i.e., regardless of the modifications to the fee agreement. As Defendants frame the issue, the fact that the County is still proceeding with CBW on a contingent-fee basis preserves the issue for this Court's resolution. We conclude that Defendants' due-process complaint is not rendered moot by the County's execution of a new fee agreement with CBW.

Our conclusion that Defendants' due process complaint is not moot is buttressed by a recent opinion from a federal district court in Kentucky, which we discuss in greater detail below. *See Merck Sharp & Dohme Corp. v. Conway*, No. 3:11-51-DCR, 2013 WL 2297179, at * 4 (E.D. Ky. May 24, 2013). In *Merck*, the federal district court concluded, as we do here, that a state attorney general's execution of a new contingent-fee agreement did not moot a lawsuit challenging his retention of outside counsel on a contingent-fee basis under the due process clause. *Id.* The court reasoned, "The actual terms of the contracts between the AG

14

and outside counsel—while certainly relevant to the resolution of the issue—are not necessary elements of Merck's claims"; thus, "[c]hanging the agreement to add some additional terms regarding control over the action . . . did not resolve the conflict between the parties." *Id.*

## Temporary Injunction

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *INEOS Grp., Ltd. v. Chevron Phillips Chem. Co., LP*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves three specific elements: (1) a cause of action, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 891 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Butnaru*, 84 S.W.3d at 204); *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The decision to grant or deny a temporary injunction lies in the trial court's sound discretion, and the trial court's ruling is subject to reversal only for an abuse of discretion. *Walling*, 863 S.W.2d at 58; *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978). We must not substitute our judgment for the trial court's judgment

unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *See Butnaru*, 84 S.W.3d at 204; *Johnson v. Fourth Ct. App.*, 700 S.W.2d 916, 918 (Tex. 1985); *TMC Worldwide*, 178 S.W.3d at 36.

**Probable Right to Relief**

Our analysis focuses on whether Defendants established a probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204. On that subject, Defendants argue that the prosecution of the underlying lawsuit by contingent-fee attorneys should be enjoined because (1) the lawsuit, which seeks civil penalties only, is "analogous to a criminal proceeding" and therefore should be treated as such and (2) the County's "delegation of enforcement power to private, contingent-fee attorneys violates Defendants' right to a fair and neutral prosecution under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." According to Defendants, if the County sought to hold them criminally responsible, there would be no question that the County could not delegate its enforcement power to private attorneys who are paid per conviction. The question then is whether the County may "farm-out" a punitive civil-enforcement action to private attorneys who will recover a share of any penalties awarded. Defendants assert that CBW's profit motives—not "the public interest or Defendants' purported culpability"—will drive this litigation. They ask this Court to declare that due

16

process requires a "bright-line prohibition against the use of contingent-fee counsel" in civil-penalties-only cases brought by a governmental entity.[10]

## A. The due process clause has not been interpreted as establishing a blanket prohibition against the use of contingent-fee lawyers

At oral argument, Defendants characterized their claim as one for procedural due process. Questions of procedural due process require an analysis of (1) whether the interest asserted is "within the Fourteenth Amendment's protection of liberty and property," and (2) if so, what process is due to sufficiently protect that interest. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–71, 92 S. Ct. 2701, 2706 (1972); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 1153−54 (1982); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

Defendants have not specifically identified the liberty or property interest they contend is entitled to constitutional protection under the first prong of our procedural due-process analysis. Their request for injunctive relief focuses primarily on the second prong. Specifically, Defendants contend that the process due under the Fourteenth Amendment in civil-penalties-only cases, like this one,

---

[10] Because state governmental entities and public agencies are statutorily authorized to enter into contingent-fee contracts for legal services after the performance of certain conditions precedent without regard to the nature of the underlying proceeding, Defendants due-process complaint also challenges the constitutionality of sections 2254.103 and 403.0305 of the Government Code as applied here. *See* TEX. GOV'T CODE ANN. §§ 403.0305, 2254.103.

17

includes the prosecution of a governmental entity's claims by neutral and disinterested lawyers who are primarily motivated by the public interest, not pecuniary gain. According to Defendants, "[d]ue process cannot tolerate the pernicious influence of personal financial gain" in a case in which the only remedy sought is punitive.

In support of their contention, Defendants rely primarily on the due process clause itself and on authority from the California Supreme Court and federal courts in Kentucky and the District of Columbia. They also direct us to the United States Supreme Court's holding in *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S. Ct. 1610 (1980). Because these authorities do not show that due process prohibits a governmental entity from retaining contingent-fee counsel in civil-penalties-only cases, we hold that Defendants have not established a probable right to relief.

## 1. Federal authorities[11]

We begin with *Marshall*. In *Marshall*, an employer challenged the provision of the Fair Labor Standards Act that returned civil penalties collected for violations of child labor laws to the administrative office charged with enforcing the FLSA. *Id*. at 240, 242, 100 S. Ct. at 1613, 1616. The question presented was whether the penalties provision violated due process by creating an impermissible risk of bias in the FLSA's enforcement and administration. *Id.* at 239, 100 S. Ct. at 1611. The Court answered that question negatively, holding that the "rigid requirements of [neutrality] designed for officials performing judicial or quasi-judicial functions,

---

[11] In addition to the cases we discuss below, Defendants cite *Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regulatory Comm'n*, 962 F.2d 45 (D.C. Cir. 1992), for two propositions: (1) "It is beyond debate that due process would prohibit a criminal prosecutor from employing contingency-fee attorneys who are compensated based on the number of convictions they secure"; and (2) "[D]ue process neutrality principles 'apply with equal force to the government's civil lawyers.'" We do not discuss *Freeport* in great detail because it was not a due process case, and the court did not make any holding requiring prosecutorial neutrality. Rather, *Freeport* is noteworthy only because the court affirmed in dictum that "a government lawyer has obligations that might sometimes trump the desire to pound an opponent into submission." *Id.* at 46, 48. That proposition is not disputed in this appeal. *Accord Berger v. U.S.*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, . . . is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law . . . . He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.").

are not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Id.* at 248−49, 100 S. Ct. at 1616 (emphasis added) (observing that neutrality in adjudicative proceedings safeguards two central concerns of procedural due process—(1) "prevention of unjustified or mistaken deprivations" and (2) "promotion of participation and dialogue by affected individuals in the decisionmaking process"—but that those concerns are not implicated to same degree when prosecutor, not judge, has incentive for securing penalties).

While the Court declined to apply the strict rules of judicial neutrality to prosecutors, it stopped short of holding that the due process clause imposes no limits on prosecutorial partisanship. *Id.* at 249, 100 S. Ct. at 1616. The influence alleged to impose bias on the FLSA administrator in that case was too remote to raise constitutional concerns. *Id.* at 249−50, 100 S. Ct. at 1617−18. The Court warned, however, that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id.* at 249, 100 S. Ct. at 1617.

The "limits there may be on a financial or personal interest of one who performs a prosecutorial function" are undefined by the Court, but we find the authorities cited by the Court in support of its warning instructive. *Id.* at 250, 100 S. Ct. at 1617. In hinting at the circumstances that might limit an attorney's

personal and financial interests in litigation, the Court cited the rule of disqualification for officers and employees of the Department of Justice. *See id.* at 250, 100 S. Ct. at 1617 (citing 28 U.S.C. § 528). Regarding potential "constitutional questions," the Court cited a case in which it observed that a criminal prosecutor should not exercise his discretion in pursuing guilty pleas based on impermissible factors such as race or religion. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S. Ct. 663, 669 (1978)). The Court noted that the particular question it declined to answer in *Marshall* was "whether different considerations might be held to apply if the alleged biasing influence contributed to prosecutions against particular persons, rather than to a general zealousness in the enforcement process." *Id.* at 250 n.12, 100 S. Ct. at 1617 n.12. In this context, we do not read *Marshall* to support a blanket prohibition against the zealous pursuit of civil penalties by governmental entities using lawyers who have a financial stake in the outcome of the case.

Defendants also rely on a more analogous federal case, *Merck Sharp & Dohme Corp. v. Conway*, 861 F. Supp. 2d 802 (E.D. Ky. 2012). But it too does not establish Defendants' probable right to relief. There, the Kentucky Attorney General sought to recover civil penalties for the corporation's activities related to the marketing and distribution of a prescription drug; it did not seek any form of compensatory damages. *Id.* at 806. The corporation argued that the AG had

21

violated the due process clause by retaining contingent-fee lawyers to aid in the enforcement of consumer protection laws. *Id.* at 807. The court considered, first, whether the contingent-fee arrangement between the AG and outside counsel constituted a "likely" violation of the corporation's due process rights so as to justify an award of injunctive relief and, second, whether the requirement of neutrality imposed on government attorneys in certain cases applied to private attorneys prosecuting consumer-protection-law violations. *Id.* at 811.

The court noted that while "[i]t is a basic tenet of constitutional law that due process requires a neutral and detached judge in the first instance[,] . . . [t]he requirement of neutrality is much narrower in the case of prosecuting attorneys." *Id.* at 811 (quotation and citations omitted). Nonetheless, the court recognized that "a prosecutor's financial interest in the outcome of a case will violate the defendant's right to due process" under some circumstances. *Id.* at 812. (referencing *Marshall*, 446 U.S. at 249−50, 100 S. Ct. at 1617). As examples of the narrow circumstances in which due process demands prosecutorial neutrality, the court listed criminal prosecutions and civil actions that resemble criminal prosecutions.[12] *Id.* at 813 The court then concluded that the AG's lawsuit seeking

---

[12] The *Merck* court noted that the only two types of civil actions previously determined to be sufficiently like criminal prosecutions to invoke due process protection were eminent-domain and public-nuisance abatement actions. 861 F. Supp. 2d at 813. Numerous other courts have written about the types of civil cases that do not sufficiently resemble a criminal prosecution to invoke due process

22

penalties only for the purpose of punishment and deterrence, and not based on any actual loss suffered, was "penal in nature and thus implicate[d] the [due process] requirement of neutrality." *Id.* at 814.

In concluding that the AG's lawsuit invoked due process concerns, the *Merck* court did not draw a bright-line rule prohibiting the use of contingent-fee counsel in every instance the government seeks civil penalties rather than compensatory damages; in fact, the court ultimately concluded that the trial court did not err in denying the corporation injunctive relief. The court announced a test by which to assess the permissibility of a contingent-fee arrangement—the extent to which the government lawyer exercises control over the litigation. *Id.* (citing Leah Godesky, *State Attorneys General and Contingency Fee Arrangements: An Affront to the Neutrality Doctrine*, 42 COLUM. J.L. & SOC. PROBS. 587, 590 (2009), for proposition that most courts presented with issue have determined contingent-fee arrangements between state attorneys general and outside counsel are permissible if certain criteria are met). If the government lawyer explicitly retains

guarantees. *See, e.g.*, *City & Cnty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1134−35 (N.D. Cal. 1997) (concluding that fraud action did not "raise concerns analogous to those in the public nuisance or eminent domain contexts" so as to justify disqualification of contingent fee attorneys retained by counties); *Philip Morris, Inc. v. Glendening*, 709 A.2d 1230, 1242−44 (Md. 1998) (upholding retention of contingent-fee counsel to assist with tort litigation against tobacco companies because no constitutional or criminal violations were directly implicated).

the power to control the litigation, "then the principle of neutrality need not apply to the private counsel, because they are not in a position where their interest in maximizing their contingent fee can influence the balancing of interests or any of the other decisions that are made exclusively by the [government lawyer]." *Id.* at 815 (quotation and citation omitted). Because the *Merck* contingent-fee contract protected the AG's "right at all times to direct the litigation in all respects, including but not limited to, whether and when to initiate litigation, against whom actions will be taken, the claims to be made in said litigation, approval and/or rejection of settlements and the amount and type of damages to be requested," and because the corportaion did not show the contingent-fee lawyers had impermissibly invaded the AG's sphere of control, the corporation did not show a substantial likelihood of success on the merits of its constitutional claim. *Id.* at 807, 815, 818 (emphasizing that preliminary injunctions are "reserved for only the most egregious case[s], and should not be extended to cases which are doubtful or do not come within well-established principles of law").

Both parties subsequently moved for summary judgment on the corporation's claim that the state attorney general had improperly delegated its authority to private counsel "having a clear, direct, and substantial financial stake in the outcome of a punitive enforcement action that must be prosecuted in the public interest or not at all." *Merck Sharp & Dohme Corp.*, No. 3:11-51-DCR,

24

2013 WL 2297179, at *2 (E.D. Ky. May 24, 2013). Recently, the federal district court determined that the state attorney general was entitled to judgment as a matter of law because there was no violation of the corporation's due process rights. *Id.* at *17. Just as it was in the court's decision to deny injunctive relief, the attorney general's retention of control was critical in the summary judgment proceedings. *Id.* at *5−17. The court concluded that the corporation failed to meet its burden of showing that private counsel had invaded the sphere of the attorney general's control by engaging in conduct that exceeded the reasonable limits of a private attorney performing a prosecutorial function. *Id.* at *9. The court offered thoughtful instructions regarding the level of control by the attorney general, concluding there is no constitutional requirement that the attorney general be involved in every detail of the litigation if he retains control over the critical decisions in the case. *Id.* As the court pointed out, the legal system would cease to function efficiently if the person who controlled the ultimate decisions in a case was required to oversee and approve every aspect of the litigation. *Id.* at *13. Indeed, the purpose of retaining outside counsel to assist in the prosecution of public-interest suits would be defeated. *Id.*

## 2. California authorities

Defendants also look to California law, primarily the California Supreme Court's decision in *People ex rel. Clancy v. Superior Court*, 705 P.2d 347 (Cal.

25

1985). In *Clancy*, the City of Corona failed on several occasions to stop the operations of an adult bookstore. *Id.* at 348−49. After passing an ordinance targeting the bookstore, the City hired a private attorney on a contingent-fee basis to bring public-nuisance actions against the bookstore. *Id.* The California Supreme Court determined that the contingent-fee arrangement was "inappropriate under the circumstances." *Id.* at 348. Although Defendants assert that the California Supreme Court applied due-process principles to invalidate the contingent-fee agreement, *Clancy*'s holding was based on attorney-disqualification rules. The court did not base any part of its holding on notions of due process; rather, the court acted under its general authority "to disqualify counsel when necessary in the furtherance of justice." *Id.* at 350.

The court determined that the contingent-fee arrangement was not in the furtherance of justice by analogizing the public-nuisance action to an eminent-domain proceeding―a type of proceeding that court had previously concluded required neutrality on the part of government attorneys. The court explained:

> [T]he abatement of a public nuisance involves a balancing of interests. On the one hand is the interest of the people in ridding their city of an obnoxious or dangerous condition; on the other hand is the interest of the landowner in using his property as he wishes. And when an establishment such as an adult bookstore is the subject of the abatement action, something more is added to the balance: not only does the landowner have a First Amendment interest in selling protected material, but the public has a First Amendment interest in having such material available for purchase. Thus, as with an eminent domain action, the abatement of a public nuisance involves a delicate

26

weighing of values. Any financial arrangement that would tempt the government attorney to tip the scale cannot be tolerated.

*Id.* at 352. The possibility that the public-nuisance action could subject the bookstore owner to criminal liability also influenced the court's decision. *Id.*

More than twenty years later, the California Supreme Court clarified that *Clancy* should not be construed as a complete bar to any arrangement in which outside counsel has a financial stake in the outcome of a case brought on the public's behalf. *See Cnty. of Santa Clara v. Superior Court*, 235 P.3d 21 (Cal. 2010). In *Santa Clara*, a number of public-entity plaintiffs filed a public-nuisance action against lead paint manufacturers, seeking only abatement. *Id.* at 43−44. Like the County here, the public-entity plaintiffs were represented by government counsel and contingent-fee counsel. *Id.* at 44. The defendants filed a motion "to bar payment of contingent fees to private attorneys," which the trial court granted. *Id.* The trial court's ruling was reversed on appeal. *Id.*

The *Santa Clara* court read *Clancy* narrowly, determining that there were "different means by which prosecutorial duties may be delegated to private attorneys without compromising either the integrity of the prosecution or the public's faith in the judicial process." *Id.* Because the liberty interests at stake in *Clancy* were akin to the vital liberty interests implicated in a criminal prosecution, the invocation of the rule categorically barring criminal prosecutors from working on a contingent-fee basis was justified. Thus, the nature of the particular nuisance

27

action in *Clancy*—an action considered by that court to implicate important First Amendment concerns and to threaten ongoing business activity and criminal liability—was critical to the application of the rules governing attorney disqualification in criminal cases. *Id.* at 54. The court reasoned:

> In light of these interests, the case required the same 'balancing of interests' and 'delicate weighing of values' on the part of the government's attorney prosecuting the case as would be required in a criminal prosecution. Because of this strong correlation, the disqualification of a private attorney with a pecuniary interest in the outcome of the case was mandated.

*Id.*

In contrast to the situation in *Clancy*, neither a liberty interest nor the right of an existing business to continued operation was threatened by the *Santa Clara* prosecution. The court determined that a private attorney's financial interest in a case does not mandate disqualification "when fundamental constitutional rights and the right to continue operation of an existing business are not implicated." *Id.* at 57. Absent those circumstances, a case is more like an ordinary civil case than a criminal prosecution. *Id.* at 56. The court further noted that *Clancy*'s concern for the misuse of government resources against an outmatched individual defendant was not implicated when, as is true here, the "[d]efendants are large corporations with access to abundant money and legal resources." *Id.*

We find another distinction between *Clancy* and *Santa Clara* relevant. Whereas *Clancy* was prosecuted by a private attorney on behalf of a public entity,

28

the *Santa Clara* plaintiffs, like the County here, were represented by both government and private counsel. The *Santa Clara* court reasoned that retention of private counsel on a contingent-fee basis is permissible if neutral government attorneys retain power to "control and supervise the litigation." *Id.* at 57−58.

> Private counsel serving in a subordinate role do not supplant a public entity's government attorneys, who have no personal or pecuniary interest in a case and therefore remain free of a conflict of interest that might require disqualification. Accordingly, in a case in which private counsel are subject to the supervision and control of government attorneys, the discretionary decisions vital to an impartial prosecution are made by neutral attorneys and the prosecution may proceed with the assistance of private counsel, even though the latter have a pecuniary interest in the case.

*Id*. at 59; *cf. FTC v. Am. Nat'l Cellular,* 868 F.2d 315, 319 (9th Cir.1989) (stating, in case involving court's authority to appoint FTC attorney to prosecute contempt action in suit brought by FTC, that "under certain circumstances, a government attorney may lack the impartiality and appearance of impartiality that our system of justice demands," but rejecting argument that appointment was improper because Justice Department retained control of the investigation, which "substantially lessened" potential for "interested decision-making").

### 3.    Other authorities

While this appeal was pending, the Supreme Court of Appeals of West Virginia decided whether a writ of prohibition should issue to correct the appointment of private counsel to act as special assistant attorneys general on a

contingent-fee basis in consumer-protection litigation. *See West Virginia ex rel. Discover Fin. Servs., Inc. v. Nibert*, Nos. 13-0086, 13-0102, slip. op. at 1 (W.V. June 4, 2013). The petitioner sought to disqualify the special assistant attorneys general on many of the same grounds on which Defendants seek injunctive relief here, including that contingent-fee arrangements for lawyers acting on a governmental entity's behalf violate due process and provide incentives for lawyers to put their own financial interest ahead of the public's interest in justice. The court summarily rejected the petitioner's due-process contentions as lacking support in the law. *Id.* at 7 n.20 (explaining, "Petitioner has not cited to, nor have we found, *any* case that supports a due process violation claim through the use of special assistant attorneys general in the prosecution of civil cases" and reading *Marshall* to hold that "federal Due Process Clause was *not* violated because of the enforcement of child labor laws by an assistant regional administrator"). In considering whether the appointed attorneys' interest in obtaining a contingent fee violated a rule of professional conduct prohibiting lawyers from accepting representation that may be materially limited by their own interest, the court made many of the same distinctions we make regarding *Clancy*—namely that (1) *Clancy* involved a private attorney prosecuting a civil action for conduct that was also criminal and (2) the private attorney acted independently of the city attorney and had absolute control of the litigation. *Id.* at 27−32. The court ultimately concluded

30

that disqualification of the appointed attorneys was not warranted given those distinctions. *Id.* at 32.

Another case that the parties have not cited but we find relevant here is *State v. Lead Industrial Association, Inc.*, 951 A.2d 428 (R.I. 2008). There, the Rhode Island Supreme Court rejected a challenge to the Attorney General's employment of contingent-fee counsel in public nuisance actions on the basis of public policy. *Id.* at 475. While the court observed that the AG and public prosecutors share the same heightened ethical duties, the court held,

> [T]here is nothing unconstitutional or illegal or inappropriate in a contractual relationship whereby the [AG] hires outside attorneys on a contingent fee basis to assist in the litigation of certain *non-criminal* matters. Indeed, it is our view that the ability of the [AG] to enter into such contractual relationships may well, in some circumstances, lead to results that will be beneficial to society—results which otherwise might not have been attainable.

*Id.* at 475. The Court cautioned, however, the contingent fee agreement must provide that the AG "retains *absolute and total control over all critical decision-making*" in such cases. *Id.*

### 4. Conclusion

We decline Defendants' invitation to become the first court to hold that the due process clause establishes a blanket prohibition against a governmental entity's engagement of private counsel on a contingent-fee basis to pursue civil litigation in which the only remedy sought is civil penalties. Defendants' only explanation for

why we should so hold is that this lawsuit resembles a criminal prosecution because the County seeks exclusively to recover civil penalties, as opposed to any measure of compensatory damages. But none of the authorities cited by Defendants granted injunctive relief based solely on the governmental actor's pursuit of civil penalties. Contrary to Defendants' assertions, the *Clancy* court did not label the action there as "quasi-criminal"; the court recognized only that public nuisance actions *could* involve both civil and criminal elements. 705 P.2d at 352−53. And while the *Merck* court described the penalties-only action as "penal in nature," the court nevertheless denied the request for an injunction based on the control retained by the government attorney. 861 F. Supp. 2d at 814, 818.

The County, not CBW, made the decision to pursue this litigation. Once a decision to prosecute has been made, lawyers who represent a governmental entity in litigation may act as advocates, not simply as adjudicators of whether to continue the prosecution. And, as advocates in an adversarial system, prosecutors are necessarily permitted, even required, to be zealous in their enforcement while being mindful of the public interest.[13]

---

[13]     Even in the criminal justice system, prosecutors are not *entirely* neutral and detached. Citing *Marshall*, the Second Circuit explained that "a prosecutor need not be disinterested on the issue of whether a prospective defendant has committed the crime with which he is charged. If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means. True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury—not the prosecutor." *Wright v. U.S.*, 732 F.2d

In addition, Defendants have not presented any argument or evidence that the County's lawsuit implicates other constitutionally protected interests that justify treating the lawsuit in the same manner as a criminal prosecution. *Cf. Santa Clara*, 235 P.3d at 57−58. At oral argument, Defendants characterized their complaint as one regarding the deprivation of a property interest without procedural due process, but they have not alleged what property interest is implicated. For example, they have neither alleged nor established that the County's lawsuit threatens the continued operation of their businesses. In their briefing, Defendants assert they have liberty interests at stake because the County cites to criminal statutes in its pleadings. The County, however, unequivocally disclaims any intention to pursue criminal charges against the Defendants, and we do not read the County's pleadings to threaten such action. As the California Supreme Court clarified in *Santa Clara*, something more than what has been presented here is required to make the County's lawsuit decidedly more criminal than civil in nature. *See Santa Clara*, 235 P.3d at 56. On this record, we cannot conclude that Defendants have established a probable right to relief under the legal principles on which they rely.

---

1048, 1056 (2d Cir. 1984); *see also Tumey v. Ohio*, 273 U.S. 510, 535 (1927) ("It is further said with truth that the Legislature of a state may and often ought to stimulate prosecutions for crime by offering to those who shall initiate and carry on such prosecutions rewards for thus acting in the interest of the state and the people.").

**B.      Other considerations support the trial court's ruling**

Because an injunction is an equitable remedy, the trial court weighs the respective conveniences and hardships of the parties and balances the equities. *See In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Pool v. River Bend Ranch, LLC*, 346 S.W.3d 853, 860 (Tex. App.—Tyler 2011, pet. denied); *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 478 (Tex. App.—Dallas 2010, no pet.). Consideration of the equities involves weighing the public interest against the injury to the parties from the grant or denial of injunctive relief. *See Hot Rod Hill Motor Park v. Triolo*, 276 S.W.3d 565, 568 (Tex. App.—Waco 2008, no pet.); *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 401−02 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The harm to the public includes public convenience and necessity. *McAfee MX v. Foster,* No. 02-07-080-CV, 2008 WL 344575, at *2 (Tex. App.—Fort Worth Feb. 7, 2008, pet. denied) (mem. op.).

On the one hand, there is a "strong public interest in the protection of [Defendants'] due process rights"—although that interest is lighter in Defendants' broad brush attack on all contingent-fee agreements. *Merck*, 861 F. Supp. 2d at 817. On the other hand, there is a public benefit to contingent-fee agreements in some circumstances, at least according to the Texas Legislature, the County

Attorney, and the County Commissioners—all elected officials. *Cf. Lead Indus.*, 951 A.2d at 475 (stating that government use of contingent-fee contracts "may well, in some circumstances, lead to results that will be beneficial to society—results which otherwise might not have been attainable."). The use of contingent-fee lawyers may allow a governmental entity to pursue complex, non-frivolous litigation that it could not otherwise afford. Indeed, the Commissioners Court explicitly stated the "substantial need for the legal services which cannot be adequately performed by the attorneys of a governmental entity, nor can be reasonably obtained under a contract providing only for the payment of hourly fees." Contingent-fee lawyers also may provide expertise that government lawyers lack in specialized areas of the law. While Defendants complain that "profit-motivated" attorneys have "all the wrong incentives," a profit-motivation should encourage attorneys to pursue the litigation efficiently and to conclude a case quickly if it is not meritorious—at least to the same extent as attorneys paid on an hourly basis. Defendants are correct that the lawyers will be incentivized "to pursue maximum penalties," but that is true for many advocates who take a case to the jury. At best, the balance of the equities does not weigh in favor of finding that the trial court erred in denying temporary injunctive relief.

Moreover, Defendants' only complaint regarding CBW is that the firm will be paid on a contingent-fee basis. We reject the contention that simply because a

lawyer will be paid a contingent fee in a civil case means that lawyer will disregard any heightened standards to which a lawyer performing government functions is subject. The County approved the filing of suit on the same day it approved the contingent-fee arrangement. The County Attorney's name is the first name listed on the original petition, and an attorney from that office signed the petition as the "attorney in charge" of the litigation under the Rules of Civil Procedure. *See* TEX. R. CIV. P. 8 ("On the occasion of a party's first appearance through counsel, the attorney whose signature first appears on the initial pleadings for any party shall be the attorney in charge, unless another attorney is specifically designated therein."). The County's other pleadings also identify the government attorney as the first lawyer on the case, and the government attorney attended the temporary injunction hearing. Defendants did not offer any evidence that CBW's contingent-fee interest in this case has caused CBW to be overzealous in its prosecution of the underlying lawsuit, to act improperly or with a bias other than that inherent in the adversarial system, or to otherwise act in a manner contrary to the public interest. Finally, there is no evidence that Defendants are mismatched in their legal resources. *Cf. Santa Clara*, 235 P.3d at 57.

### Conclusion

No court that Defendants have cited, or that we can find, has interpreted the due process clause in the manner urged by Defendants, i.e., as adopting a blanket

36

prohibition against a governmental entity retaining private counsel on a contingent-fee basis to pursue civil litigation in which the only remedy sought is civil penalties. Because Defendants have not shown that the hiring of outside counsel pursuant to a contingent-fee contract to prosecute a civil enforcement action on a governmental entity's behalf deprives them of a property or liberty interest without procedural due process, we conclude that Defendants did not demonstrate a probable right to relief under applicable rules of law and therefore have not satisfied at least one of the essential elements for a temporary injunction. Our analysis need not go any further. *See Butnaru*, 84 S.W.3d at 204. Defendants' failure to satisfy at least one of the essential elements for a temporary injunction means the trial court did not abuse its discretion in denying Defendants' application for temporary injunctive relief. *See Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 898 (Tex. App.—Dallas 2006, no pet.) ("If [the applicant's] burden is not discharged as to any one element, it is not entitled to extraordinary relief."); *see also Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 558 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (vacating temporary injunction when applicant did not show probable right to relief). Accordingly, we affirm the trial court's order, grant the County's motion to dismiss its appeal, and dismiss all other outstanding motions as moot.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.